UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>JEAN DANHONG CHEN, et al.,<br><br>Defendants. | Case No. 18-cv-06371-LB<br><br>**ORDER DENYING DEFENDANT KUANSHENG CHEN'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Re: ECF No. 61 |

## INTRODUCTION

In this lawsuit, the Securities and Exchange Commission ("SEC") charges a scheme to violate U.S. securities laws by, among other acts, certain defendants' acting unlawfully as brokers and receiving unlawful commissions, in connection with investment offerings under the federal EB-5 Immigrant Investor Program, and then covering up the scheme.[1] The United States Citizenship and Immigration Services ("USCIS") administers the EB-5 program, which allows foreign investors to invest at least $500,000 in USCIS-approved businesses, thereafter obtain a two-year "conditional permanent residency" visa, and (if at least ten U.S. jobs are created) obtain permanent residency.[2]

---

[1] Compl. – ECF No. 1 at 1–2 (¶¶ 1–4). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 5 (¶¶ 22–24).

ORDER – No. 18-cv-06371-LB

Often, the investments are made through an investment vehicle such as a limited partnership or a limited liability company (offered through administrative entities called "regional centers").[3] The alleged scheme is that defendant Jean Chen, the sole partner of her law firm (with offices in San Francisco, San Jose, and Beijing), filed EB-5 petitions on behalf of her legal clients and then, she and her husband, co-defendant Tony Ye (her law firm's office manager), brokered transactions (even though they are not registered brokers with the SEC) by introducing the clients to regional centers for the EB-5 projects that the clients ultimately sponsored. As a result, Ms. Chen and Mr. Ye received $12 million in unlawful commissions that they did not disclose to Ms. Chen's legal clients.[4] Then, with the help of co-defendant Kuansheng Chen, who lives in Hong Kong, they tried to conceal the scheme by means that included the use of Mr. Chen's offshore bank account.[5]

Mr. Chen moves to dismiss the complaint against him for lack of personal jurisdiction and for lack of proper service.[6] The court can decide the motion without oral argument. Civ. L. R. 7-1(b). The court denies the motion to dismiss because the SEC has made a prima facie showing of specific personal jurisdiction and properly served Mr. Chen.

## STATEMENT

The next sections review the facts relevant to personal jurisdiction, the facts relevant to service of process, and other relevant procedural history.

### 1. Facts Relevant to Personal Jurisdiction

The facts relevant to personal jurisdiction involve four categories: (1) Mr. Chen's alleged use of his bank and brokerage accounts and an entity called New Horizons to facilitate unlawful payments from the regional centers to Ms. Chen and Mr. Ye; (2) his involvement in projects that

---

[3] *Id.* (¶¶ 22–23).

[4] *Id.* at 1–2 (¶ 1), 5–6 (¶¶ 26–34). Mr. Chen says he is a citizen and resident of Hong Kong and Beijing. Kuansheng Chen Decl. – ECF No. 61-1 at 3 (¶ 2).

[5] *See* Comp. – ECF No. 1 at 3 (¶ 11).

[6] Mot. – ECF No. 61 at 12–21.

ORDER – No. 18-cv-06371-LB                                     2

Ms. Chen and Mr. Ye managed (without disclosing them to clients); (3) other contacts with the district; and (4) the evidence that Mr. Chen submits to defeat personal jurisdiction.

**1.1 Use of Accounts and New Horizons to Facilitate the Scheme**

The alleged broker activity was from at least 2008 to at least 2016.[7] Until December 2013, the regional centers paid the commissions directly to Ms. Chen's law firm's U.S.-based bank accounts.[8] But in 2012, "certain regional centers stopped paying commissions directly to U.S.-based individuals and entities because they recognized the payments could violate broker-dealer registration requirements contained in the federal securities laws."[9] As a result, Ms. Chen and Mr. Ye had the regional centers pay the compensation to Mr. Chen's China-based accounts.[10] (Mr. Chen is Ms. Chen's family friend or relative (possibly her brother) and lives in Hong Kong and Beijing.[11])

Mr. Chen did not refer investors to the regional centers and instead was a "nominee" for Ms. Chen and Mr. Ye.[12] Allegedly to lend the appearance of legitimacy to the receipt of fees, Mr. Chen "purports to be the managing director of U.S. Immigration Services of New Horizons, a China-based immigration agency."[13] But "New Horizons is not an independent agency managed by" Mr. Chen and instead is "co-owned and managed by [Ms.] Chen and [Mr.] Ye and is the Beijing branch of the[ir] Law Offices."[14] For example, the addresses for New Horizons and the Beijing

---

[7] Compl. – ECF No. 1 at 7 (¶¶ 38, 42).

[8] *Id.* at 9 (¶ 49).

[9] *Id.* (¶ 50).

[10] *Id.* (¶ 52).

[11] *Id.* at 3 (¶ 11) (friend or relative), 13 (¶ 72) (Mr. Chen said that Ms. Chen was his sister); *see* Kuansheng Chen Letter to Schwab, Ex. 14 to Dolan Decl. – ECF No. 62-15 at 2 (describing Ms. Chen as his sister); Kuansheng Chen Decl. – ECF No. 61-1 at 3 (¶ 2).

[12] *Id.* at 9 (¶ 53); *see also* Kuansheng Chen Decl. – ECF No. 61-1 at 3 (¶ 5).

[13] Compl. – ECF No. 1 at 9 (¶ 54); *see also* Kuansheng Chen Decl. – ECF No. 61-1 at 3 (¶ 3) (describes himself has the Director of Immigration (but not an owner) of New Horizons); Kuansheng Chen Statement, Ex. 1 to Dolan Decl. – ECF No. 62-2 at 4 (shared Ms. Chen's contact information with customers, communicated client questions and answers to Ms. Chen, and sent documents to Ms. Chen or other lawyers by means such as express mail, email, webchat, qq, or phone calls; Ms. Chen's legal staff checked for client documents every day and "will know it is our customers").

[14] Compl. – ECF No. 1 at 9–10 (¶¶ 54–56).

1  law office are the same, the New Horizons office is staffed by law-office employees, the email
2  domain and signature block for the office manager in Beijing shows that he worked for the law
3  office, and the manager told EB-5 investors that he worked for the law office.[15] The manager in
4  Beijing removed his affiliation with the law office and replaced it with an affiliation with New
5  Horizons only after Ms. Chen and Mr. Ye learned about the SEC's investigation of New
6  Horizons.[16] At that time, Ms. Chen and Mr. Ye also "scrubbed all mention of the Beijing [law]
7  office from Law Office materials."[17] Ms. Chen testified during the SEC investigation that she
8  never had a law office in Beijing, an account that is contradicted by documents that her law office
9  provided to investors before the SEC investigation, including listing the Beijing office on her
10 firm's website, brochures, retainer agreements, and business cards.[18] In 2009, "[Ms.] Chen and
11 [Mr.] Ye became co-owners of New Horizons," which was "an existing immigration agency in
12 Beijing that offered services to individuals interested in immigrating to Canada."[19] "Since 2009,
13 all of the Law Offices' activities in China purportedly have been carried out under New Horizons'
14 operating permit because China requires that companies providing immigration services in China
15 have a particular permit."[20]

16 To receive the commission payments from the regional centers, regional centers required
17 marketing or referral agreements in the name of Mr. Chen or New Horizons.[21] Mr. Chen signed
18 the agreements, but Mr. Ye allegedly negotiated the terms of the agreements.[22] After April 2012,
19 when Mr. Chen was receiving the commission payments, Ms. Chen and Mr. Ye "continued to
20 correspond with the regional centers as if they were the ones referring investors to the regional

---

[15] *Id.* at 10 (¶ 56).
[16] *Id.*
[17] *Id.* (¶ 57).
[18] *Id.*
[19] *Id.* (¶ 58).
[20] *Id.*
[21] *Id.* at 10 (¶ 59).
[22] *Id.*

ORDER – No. 18-cv-06371-LB                 4

centers."[23] From April 2012 to August 2016, "at least five U.S.-based regional centers paid from mostly U.S.-based accounts at least $8,781,500 ($8,561,500 since January 14, 2013) to accounts held in the name of Kuansheng Chen," for the benefit of Ms. Chen and Mr. Ye.[24] By December 2016, during the SEC's investigation, "the regional centers were directed to stop paying" Mr. Chen, and instead, "New Horizons had at least two foreign companies act as substitute 'nominees' to receive transaction-based compensation through overseas bank accounts on its behalf," and both "are affiliated with New Horizons as subagents."[25]

Mr. Chen allowed Ms. Chen and her law offices access to his bank account by giving her a physical token with the password needed to access the account."[26] Ms. Chen or her employees logged into the account from the United States, and sometimes, they would contact Mr. Chen "to obtain additional information needed to access the account."[27] Mr. Chen also had a U.S. Charles Schwab account, and — because Mr. Chen assigned Ms. Chen power of attorney over the account, and Mr. Ye pretended to be Mr. Chen — Ms. Chen and Mr. Ye used the account to return their commissions to the United States.[28] In March 2016, after Ms. Chen and Mr. Ye learned about the SEC investigation, Mr. Ye, "acting as Kuansheng Chen," closed the brokerage account.[29]

**1.2  Mr. Chen's Connection With Other Charged Projects**

In the complaint, the SEC names as a defendant Tree Lined Properties, Inc., an entity controlled by Ms. Chen and Mr. Ye.[30] In short, the SEC alleges that Ms. Chen and Mr. Ye

---

[23] *Id.* at 11 (¶ 60).

[24] *Id.* (¶ 61). The SEC alleges that "[i]t is possible that additional regional centers paid Kuansheng Chen additional transaction-based compensation," but Ms. Chen, Mr. Le, and the law office did not produce emails where regional centers talked about payments to be made to Mr. Chen, and while the SEC has some emails produced by third parties, it does not have insight into the full scope of compensation sent to Mr. Chen, and it may be higher than $12,709,500. *Id.* (¶ 62).

[25] *Id.* (¶ 64).

[26] *Id.* at 12 (¶ 68).

[27] *Id.*

[28] *Id.* (¶¶ 69–70).

[29] *Id.* at 13 (¶ 71).

[30] *Id.* at 3 (¶ 13).

ORDER – No. 18-cv-06371-LB                5

1    sponsored EB-5 projects through an entity called Golden State Regional Center, LLC (also a co-
2    defendant), allegedly without disclosing their involvement.[31] Ms. Chen and Mr. Ye allegedly used
3    Tree Lined to purchase the land and develop projects, all without disclosing their conflicts of
4    interests to their legal clients.[32] Mr. Chen claims to have loaned money — evidenced by seven
5    loan agreements (all with California choice-of-law provisions) — for real-estate development.[33]
6    The SEC disputes that the amounts were loans but cites them — and other evidence such as
7    Mr. Chen's sending at least $1 million from his Schwab account to one of the Golden State
8    projects, Mr. Chen's receiving $2 million back to the Schwab account, and millions from the
9    Schwab account used to purchase the land for one of the projects — as evidence of his ties to the
10   transactions and entities charged in the complaint.[34]

### 1.3 Other Alleged Contacts with the United States

During the timeframe in the SEC case, Mr. Chen owned four pieces of real property in the United States (in one in Pleasant Hill and three in Emeryville), rented them to tenants, and allegedly sold them after Ms. Chen and Mr. Ye learned about the SEC investigation.[35] In addition to the Charles Schwab account, he had a brokerage account at TD Ameritrade.[36] He used Ms. Chen's address as his address of record for his accounts, explaining that she was his sister and he stayed with her.[37] He has a Social Security number and, for tax years 2012 and 2013, paid federal

---

[31] *Id.* at 15–23 (¶¶ 85–129).

[32] *Id.* at 23–28 (¶¶ 130–163).

[33] Loan Agreements, Exs. 2–8 to Dolan Decl. – ECF Nos. 62-3 to 62–9.

[34] Exs. 2–8 & 26–27 to Dolan Decl. – ECF Nos. 62–3 to 62–8, 62–27 to 62–29; Compl. – ECF No. 1 at 26 (¶ 145).

[35] Records, Ex. 11 to Dolan Decl. – ECF No. 62-12 & Exs. 15–19 to Dolan Decl. – ECF Nos. 62-16 to 61–20.

[36] The SEC submitted evidence of a TD Ameritrade account in 2001 (in the form of Mr. Chen's communications to TD Ameritrade forwarding his U.S. Visa) that still existed in 2020. Exs. 12–13 to Dolan Decl. – ECF Nos. 62-13 & 62–14.

[37] Exs. 13–14 to Dolan Decl. – ECF Nos. 62-14 & 62–15. Mr. Chen also told TD Ameritrade (in 2001) that he lived in the United States because his children attended college here. Ex. 12 to Dolan Decl. – ECF No. 62-13. The 2001 time period is attenuated from the scheme alleged in the SEC's complaint.

and California taxes.[38] The SEC points to other information about his loan of money to Ms. Chen and Mr. Ye to buy their home and his travel here especially for real-estate investing.[39]

### 1.4  Mr. Chen's Additional Information

Mr. Chen describes his activities as the Director of Immigration as "lawful under Chinese law."[40] He says that New Horizons has been controlled by third-party shareholders (and not the "Principal Defendants") since 2005 (and attaches a screenshot of the Chinese government's website that purportedly shows that).[41] He describes New Horizons' business as follows:

> New Horizons provides administrative services to Chinese clients pursuant to its Chinese Business license. As part of its business, where New Horizons clients are interested in obtaining residency in the U.S. through the EB-5 Immigrant Investor Program, New Horizons may advise those clients about regional centers, and the regional centers may pay appropriate fees to New Horizons as authorized under Chinese laws. New Horizons does not have any employees in the U.S. and does not market in the U.S. or engage in directed selling efforts in the U.S.[42]

## 2. Facts About Service of Process

On November 2, 2018, the court granted the SEC's request to serve Mr. Chen by email delivery and overnight delivery of the summons and complaint to his United States counsel.[43] The SEC filed proof of service on November 6, 2018.[44]

## 3. Other Relevant Procedural History

The complaint has eight claims: (1) fraud in the offer or sale of securities, in violation of § 17(a) of the Securities Act, 15 U.S.C. §§ 77q(a)(1)–(3) (against Ms. Chen, her law offices, and

---

[38] Exs. 15–19 to Dolan Decl. – ECF No. 62-16 to 62–20.

[39] Ye Dep., Ex. 34 to Dolan Decl. – ECF No. 62-35 at 5 (p. 96:1–9), 7 (p. 188:1–7); Kuansheng Chen Statement, Ex. 1 to Dolan Decl. – ECF No. 62-2 at 2. Mr. Chen describes his contacts as more limited: "I have only visited the U.S. two times, once in around 1999 or 2000 and once in 2018, which was for personal reason; both trips lasted only a couple weeks." Kuansheng Chen Decl. – ECF No. 61-1 at 3 (¶ 6).

[40] Kuansheng Chen Decl. – ECF No. 61-1 at 3 (¶ 3).

[41] *Id.* (¶ 4).

[42] *Id.*

[43] Order – ECF No. 14.

[44] Proof of Service – ECF No. 17.

Golden State); (2) fraud in the offer or sale of securities on an aiding-and-abetting theory, in violation of § 17(a) of the Securities Act, 15 U.S.C. §§ 77q(a)(1)–(3) (against Mr. Ye, Mr. Chen, Kai Hao Robinson (a CPA and Golden State's manager), Tree Lined, and Ms. Chen's law offices); (3) fraud in connection with the purchase or sale of securities, in violation of § 10(b) of the Exchange Act, 15 U.S.C. §§ 78j(b) and Rule 10b-5, 17 C.F.R. §§ 240.10b-5(a)–(c) (against Ms. Chen, her law offices, and Golden State); (4) fraud in connection with the purchase or sale of securities on an aiding-and-abetting theory, in violation of § 10(b) of the Exchange Act, 15 U.S.C. §§ 77j(b), and Rule 10b-5, 17 C.F.R. §§ 240.10b-5(a)–(c) (against Mr. Ye, Mr. Chen, Ms. Robinson, Tree Lined, and Ms. Chen's law offices); (5) failure to register as a broker-dealer, in violation of § 15(b) of the Exchange Act, 15 U.S.C. § 78o(a) (against Ms. Chen, Mr. Ye, and Ms. Chen's law offices; (6) failure to register as a broker-dealer on an aiding-and-abetting theory, in violation of § 15(b) of the Exchange Act, 15 U.S.C. § 78o(a) (against Mr. Chen); (7) controlling-person liability under § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), for violations of § 15(a) of the Exchange Act, 15 U.S.C. § 78o(a) (against Ms. Chen and Mr. Ye); and (8) alternative liability for disgorgement (against Mr. Chen in the event that he is not found liable for the aiding-and-abetting violations in claims two, four, and six).[45]

The parties stipulated to a partial stay of the case (subject to some discovery) because Ms. Chen and Mr. Ye are charged criminally with visa fraud, obstruction of justice, aggravated identity fraud, and identity theft.[46] Mr. Chen then moved to dismiss the complaint for lack of personal jurisdiction and for lack of service of process.[47] All parties consented to the undersigned's jurisdiction.[48]

---

[45] Comp. – ECF No. 1 at 3 (¶ 10), 29–35 (¶¶ 166–204).

[46] Stipulation and Order – ECF No. 53; Indictment, No. 19-cr-00111-LHK – ECF No. 27.

[47] Mot. – ECF No. 61.

[48] Consents – ECF Nos. 7 (SEC), 22 (Kuansheng Chen), 23 (all parties), 26 (Jean Chen); 69 (addressing consent).

## STANDARD OF REVIEW

"'In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper.'" *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011)). The parties may submit, and the court may consider, declarations and other evidence outside the pleadings in determining whether it has personal jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *abrogated on other grounds as recognized in Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2001).

"'Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Ranza*, 793 F.3d at 1068 (some internal quotation marks omitted) (quoting *CollegeSource*, 653 F.3d at 1073). "[U]ncontroverted allegations must be taken as true, and '[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). But courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit[.]" *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (internal quotation marks omitted) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977)); *accord Ranza*, 793 F.3d at 1068 ("A plaintiff may not simply rest on the 'bare allegations of the complaint.'") (internal brackets omitted) (quoting *Schwarzenegger*, 374 F.3d at 800).[49]

---

[49] The court overrules Mr. Chen's objections to the SEC's evidence and considers it. *Cf. Ridgway v. Phillips*, 383 F. Supp. 3d 938, 943 (N.D. Cal. 2019) (in ruling on a personal-jurisdiction challenge, the court may "weigh the contents of affidavits and other evidence, or even hold a hearing and resort to oral testimony; . . . a prima facie showing must be based on affirmative proof beyond the pleadings, such as affidavits, testimony or other competent evidence of specific facts") (internal quotes and citations omitted).

ORDER – No. 18-cv-06371-LB    9

# ANALYSIS

## 1. Personal Jurisdiction

Mr. Chen moves to dismiss the complaint for lack of personal jurisdiction, contending that he lacks sufficient contacts with the United States.[50] The court denies the motion to dismiss because the SEC has met its prima facie burden to establish specific personal jurisdiction.

"The general rule is that personal jurisdiction over a defendant is proper if permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach v. Caddy*, 453 F.3d 1151, 1154–55 (9th Cir. 2005) (analyzing the California and federal long-arm statutes). As to the long-arm statute prong, the federal securities laws establish the basis for personal jurisdiction and authorize nationwide service of process. 15 U.S.C. §§ 77v, 78aa; *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985); *S.E.C. v. Nagaicevs*, 12-cv-00413-JST, 2013 WL 3730578, at *2 (N.D. Cal. July 12, 2013). The due-process inquiry is whether the defendant has minimum contacts with the forum such that the assertion of jurisdiction in that forum "'does not offend traditional notices of fair play and substantial justice.'" *Pebble Beach*, 453 F.3d at 1154-55 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945)). The question in securities cases thus is "whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman,* 764 F.2d at 1315 (9th Cir. 1985) (internal citations and quotation omitted); *accord In re LDK Solar Sec. Lit.*, 07-cv-05182-WHA, 2008 WL 4369987, at *5 (N.D. Cal. Sept. 24, 2008) ("Congress has provided for nationwide service of process for claims under federal securities laws . . . and therefore the question becomes whether the party has sufficient contacts with the United States, not any particular state") (internal quotes and citations omitted).

There are two types of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1779–80 (2017). The SEC asserts only specific personal jurisdiction.[51]

---

[50] Mot. – ECF No. 61 at 9–10, 12–20.

[51] Opp'n – ECF No. 62 at 14.

The inquiry about whether a forum may assert specific personal jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation. *Walden v. Flore*, 571 U.S. 277, 284 (2014). This due-process inquiry for specific personal jurisdiction has three parts:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Schwarzenegger*, 374 F.3d at 802); *accord In re LDK Solar Sec. Lit.*, 2008 WL 4369987 at *5 (applying the three-part test in a federal securities case). The plaintiff has the burden of satisfying the first two prongs of the test. *Picot*, 780 F.3d at 1211 (citations omitted). The burden then shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would be unreasonable. *Id.* at 1212 (citation omitted).

A purposeful-availment analysis generally is for lawsuits sounding in contract, and a purposeful-direction analysis is for lawsuits sounding in tort. *Schwarzenegger*, 374 F.3d at 802; *accord In re LDK Solar Sec. Lit.*, 2008 WL 4369987 at *5–6; *Chassin Holdings Corp. v. Formula VC Ltd.*, 15-cv-02294-MEJ, 2016 WL 1569986, at *5 (N.D. Cal. April 19, 2016). Courts analyze minimum contacts in securities cases under both approaches. *In re LDK Solar Sec. Lit.*, 2008 WL 4369987 at *5–6. The next sections address both standards.

**1.1 Purposeful Availment**

Purposeful availment typically is action in the forum that invokes the benefits and protections of the laws in the forum. *Pebble Beach*, 453 F.3d at 1155. It can be in the "form of affirmative conduct allowing or promoting the transaction of business in the forum." *SEC v. Jammin Java Corp.*, No. 2:15-cv-08291-SVM-MRW, 2016 WL 6595133, at *8 (C.D. Cal. July 18, 2016). In short, the SEC contends that Mr. Chen's receipt of fees for the EB-5 investments — from the

U.S.-based regional centers — and the New Horizons-Chen law offices overlap satisfy this prong. They do. The parties dispute Mr. Chen's role (victim of impersonation or integral participant[52]), but it is undisputed that he (a family member or friend) was integral to the receipt of funds in the alleged scheme. Also, his involvement with Tree Lined supports the conclusion that he purposefully promoted business here. If someone intentionally does business here, that gives rise to personal jurisdiction, even if the person resides outside the United States. *See Ballad v. Savage*, 65 F.3d 1495, 1497 (9th Cir. 1995) (Ponzi scheme by Austrian bank aimed at U.S. residents).

Mr. Chen's main argument to the contrary is that the SEC's cases are distinguishable because they involve main actors (not agents), and Mr. Ye impersonated him to commit the fraud.[53] These contentions (if true) may defeat liability, but the SEC's burden is only to "make a prima-facie showing of jurisdictional facts to withstand the motion to dismiss." *Ranza*, 793 F.3d at 1068 (internal quotations and citation omitted). It has done that, especially given the diversion of fees to New Horizons, the business and personal relationships, and the New Horizons-Chen law offices overlap.

**1.2 Purposeful Direction**

Purposeful direction exists when a defendant commits an act outside the forum that was intended to and does in fact cause injury in the forum. *Calder v. Jones*, 465 U.S. 783, 788–89 (1984). Under the "effects test," the defendant must (1) commit an intentional act (2) expressly aimed at the forum (3) that causes harm that the defendant knows is likely to be suffered in the forum. *Washington Shoe Co. v. A–Z Sporting Goods Inc.*, 704 F.3d 668, 673 (9th Cir. 2012) (quoting *Mavrix*, 657 F.3d at 1228), *abrogated on other grounds as recognized in Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). The "effects test" focuses on "the forum in which the defendant's acts were felt, whether or not the actions themselves occurred within the forum." *Mavrix*, 647 F.3d at 1228. "However, referring to the *Calder* test as an 'effects' test can be misleading. For this reason, we have warned courts not to focus too narrowly on the

---

[52] Opp'n – ECF No. 62 at 15–16; Reply – ECF No. 65 at 5–7.

[53] Reply – ECF No. 65 at 5–7.

ORDER – No. 18-cv-06371-LB         12

test's third prong — the effects prong — holding that 'something more' is needed in addition to a mere foreseeable effect." *Pebble Beach*, 453 F.3d at 1156 (citation omitted).

Here, the SEC has met its prima facie showing that Mr. Chen directed his intentional acts to the United States. Again, the contention is that he was an integral part of getting the fees (through his accounts and signing the agreements). The power of attorney does not change that conclusion, given the parties' relationship, the Tree Lined transactions, and the monies involved (run through Mr. Chen's accounts). Mr. Chen may be right on the merits: it may be that someone's forging his signature on key documents (if true) defeats liability.[54] But that does not defeat personal jurisdiction when, as is true here, the SEC has established its "prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ranza*, 793 F.3d at 1068.

The SEC also has established the remaining elements of the "effects" test: acts expressly aimed at the forum that cause harm that the defendant knows is likely to be suffered in the forum. *Washington Shoe Co.*, 704 F.3d at 673. The alleged scheme could not have happened without the alternative means to accept the fees for the investments.

The final inquiry is whether the court's exercise of jurisdiction is reasonable. *Picot,* 780 F.3d at 1211. Courts consider seven factors in determining whether exercising personal jurisdiction is reasonable: "(1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum." *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985)), *overruled in part on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206–07 (9th Cir. 2006). It is the defendant's burden to raise and address these factors in the first instance. *Bancroft & Masters, Inc.*, 223 F.3d at 1088. There is a presumption of reasonableness when the first two prongs have been

---

[54] *Id.* at 5.

met, and a defendant thereafter must present a "compelling case" that jurisdiction is unreasonable. *See Schwarzenegger,* 374 F.3d at 802.

The court's exercise of jurisdiction is reasonable. The case involves the enforcement of U.S. securities laws. Most acts – including the payment of transaction fees — happened here. Of course, the burdens of a foreign defendant to defend a case are substantial, but that does not defeat responsibility for alleged securities-laws violations here. There is no sovereignty conflict: there are no unique circumstances that preclude enforcement of U.S. securities laws. Otherwise, the factors support enforcement of U.S. securities laws here.

### 2. Adequacy of Service

The court previously approved service by alternative means. *See Xilinx, Inc. v. Godo Kaisha IP Bridge 1*, 246 F. Supp. 3d 1260, 1263 (N.D. Cal. 2017) ("There is no hierarchy of procedures, as [the defendant] suggests, that requires [the plaintiff] to attempt service through the Hague Convention or other means before seeking an order under Rule 4(f)(3)"); *cf. also id*. at 1264 ("service on a foreign corporation's counsel in the United States is an effective and reasonable method, and is not prohibited by the Hague Convention"). Mr. Chen's arguments to the contrary do not change the court's previous conclusion that service was proper.

### 3. Deposition

The court does not reach the issue about Mr. Chen's deposition because that inquiry turns on this order. The parties must confer and raise any dispute separately.

### CONCLUSION

The court denies Mr. Chen's motion to dismiss for lack of personal jurisdiction. This disposes of ECF No. 61.

**IT IS SO ORDERED.**

Dated: April 24, 2020

LAUREL BEELER
United States Magistrate Judge

ORDER – No. 18-cv-06371-LB      14